UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

MELVINA PARKER,

           Plaintiff,

      v.

ARBOR RIDGE AT BROOKMEADE,
INC., and THE COMMUNITY AT
BROOKMEADE, INC.,

           Defendants.

14-cv-4202

**OPINION**

---

Plaintiff Melvina Parker brings claims of employment discrimination and common law wrongful discharge against defendants Arbor Ridge at Brookmeade, Inc. and The Community at Brookmeade, Inc. Plaintiff alleges that defendants were her former employers and discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion is granted.

### Facts

Plaintiff is an African-American woman. Defendants' Local Rule 56.1 Statement of Material Facts Not In Dispute ("Defs.' Rule 56.1 Statement") ¶ 6. Defendant The Community at Brookmeade, Inc. ("The Community") is a non-

profit parent organization consisting of three independently incorporated non-profit retirement communities in Rhineback, New York: defendant Arbor Ridge at Brookmeade, Inc. ("Arbor Ridge"); non-defendant Brookview Inc. (d/b/a The Terraces at Brookmeade) ("The Terraces"); and non-defendant the Baptist Home of Brooklyn, New York (d/b/a The Baptist Home at Brookmeade) ("Baptist Home").  Defs.' Rule 56.1 Statement ¶ 1.

Plaintiff began her work at The Terraces on October 30, 2009, as a Certified Nurse Assistant ("CNA").[1]  Defs.' Rule 56.1 Statement ¶ 2.  Plaintiff was an at-will employee during the entire course of her employment.  Defs.' Rule 56.1 Statement ¶ 3.

According to plaintiff, sometime in early 2012, a new ownership and management group took over defendants.  Parker Aff. ¶ 8.  Shortly thereafter, plaintiff was advised by her coworker, Jennifer Oneto, that defendants were looking to terminate her employment due to her race even though she was performing her job in a satisfactory manner.  Parker Aff. ¶ 9.  Over the next several weeks, other nurses told plaintiff that the new owners "were after" her.  Parker Aff. ¶ 10.

On May 29, 2012, plaintiff was working an overnight shift with a CNA named Glenn Portman.  *See* Defs.' Rule 56.1 Statement ¶ 9.  According to

---

[1] According to defendants, plaintiff sued the incorrect organization, as non-defendant The Terraces was her employer and not The Community or Arbor Ridge.  Regardless, as explained below, summary judgment for defendants is appropriate for other reasons.

plaintiff, she went to the floor on which Portman was working, and the entire floor was flooded with water. Parker Aff. ¶ 14. Plaintiff called for Portman but the nurses' station was empty. Parker Aff. ¶ 15. Plaintiff walked down the hall to find Portman sleeping in a chair. Parker Aff. ¶ 16. Plaintiff told Portman about the water and assisted him in checking on his patients. Parker Aff. ¶¶ 17–18. Portman asked plaintiff if she was going to tell management what had happened and plaintiff responded that she was indeed required to tell management everything that had happened. Parker Aff. ¶¶ 22–23.

The following day, Portman complained to Irene Crawford, the former Assisted Living Director, that plaintiff had been sleeping while on duty the previous night. Defs.' Rule 56.1 Statement ¶ 9. Crawford and Nicole Coffey, former Director of Human Resources, met with plaintiff to discuss Portman's charges. Defs.' Rule 56.1 Statement ¶ 10. According to plaintiff, Crawford and Coffey demanded that she sign a form acknowledging the false allegations in order to keep her job, which she refused to do. Parker Aff. ¶ 28. According to defendants, plaintiff admitted that she had "nodded off" during her shift the prior evening and admitted that she had prepared medication for a resident and signed off on the medical chart as if she had given the resident the medication, but had actually given the medication to her coworker to administer to the resident. Defs.' Rule 56.1 Statement ¶ 10. Both sides agree that plaintiff was suspended pending further investigation. Defs.' Rule 56.1 Statement ¶ 10; Parker Aff. ¶ 29.

During that investigation, The Terraces learned—by way of a witness statement from another CNA, Mercedita Todaro—that plaintiff often slept during her shift.  Defs.' Rule 56.1 Statement ¶ 11.  Upon completion of the investigation, plaintiff was suspended for three days and was advised that if she committed further infractions she could be subject to termination.  Defs.' Rule 56.1 Statement ¶ 12.

A few months after reporting back to work, a new director of nursing was hired and conducted personal interviews with all employees.  Parker Aff. ¶ 31.  During the director's interview with plaintiff, she asked plaintiff about plaintiff's hair extensions and expressed concern that plaintiff was "shedding" hair extensions.  Parker Aff. ¶ 33.  Plaintiff found the interaction insulting and demeaning.  Parker Aff. ¶ 33.

On August 8, 2012, The Terraces received a complaint from CNA Maria Yen regarding plaintiff's conduct at work.  Defs.' Rule 56.1 Statement ¶ 13.  Yen informed management that on May 21, 2012, plaintiff spent too much time on her cell phone while on the clock, refused to enter a resident's room because she claimed she was allergic to the resident's cats, left a resident waiting for a shower for an excessive amount of time, and refused to enter a resident's room despite the resident ringing the call bell.  Defs.' Rule 56.1 Statement ¶ 13.

One day in September 2012, plaintiff was working a shift from 3:00 P.M. to 11:00 P.M.  Parker Aff. ¶ 34.  At around 9:30 P.M., plaintiff was informed that either she or her coworker could leave early.  Parker Aff. ¶ 35.  The two

disagreed as to who should get the benefit of the early exit.  *See* Parker Aff. ¶ 38.  Ultimately, plaintiff prevailed.  *See* Parker Aff. ¶ 38.

The following day, plaintiff was accused of sleeping on the job.  Parker Aff. ¶ 39.  It was reported that plaintiff would periodically wake up and tell her coworkers that she was available if anyone needed her and then she would go back to sleep.  Defs.' Rule 56.1 Statement ¶ 14.

Plaintiff was suspended pending investigation and ultimately terminated on September 25, 2012.  Defs.' Rule 56.1 Statement ¶ 15.

Having previously filed a charge with the Equal Employment Opportunity Commission, plaintiff commenced this action on June 11, 2014.  Before the court is defendants' motion for summary judgment filed September 2, 2015.

## Discussion

### I.  Summary Judgment Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."

Fed. R. Civ. P. 56(c)(1); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## II.   Employment Discrimination

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Employment discrimination claims asserted under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

Under the *McDonnell Douglas* framework, the initial burden is on the plaintiff to establish a *prima facie* case of discrimination. *Abrams*, 764 F.3d at 251. Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer is able to satisfy that burden, the final and

6

ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.  *Id.*

### a. Plaintiff's *Prima Facie* Case

To establish a *prima facie* showing of discrimination, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015).

Here, defendants do not dispute the first three prongs of plaintiff's *prima facie* case: she is an African-American; she was qualified for the position she held; and she was terminated.

Plaintiff's allegations relating to the fourth prong of her *prima facie* case are rather sparse.  Plaintiff alleges that a coworker informed her that defendants were looking to terminate her on account of her race.  Plaintiff also recalls feeling insulted and demeaned when asked about her hair extensions in an interview with the director of nursing.  Finally, plaintiff alleges that, in contrast to how she was treated, other employees were not terminated for sleeping on the job.  Defendants counter this last point with evidence that an Asian male employee was also terminated for sleeping on the job.  Defs.' Rule 56.1 Statement ¶ 19.

The court need not decide whether plaintiff has satisfied her minimal *prima facie* burden, because, as described below, plaintiff fails to satisfy her ultimate burden of showing that her termination was based on discrimination.

### b. Defendants' Legitimate, Non-Discriminatory Reason for Terminating Plaintiff

Assuming, *arguendo*, that plaintiff were able to establish a *prima facie* case of discrimination, the burden would shift to defendants to provide a legitimate, non-discriminatory reason for the adverse employment action. Here, defendants have indeed articulated such a reason: plaintiff's inadequate performance, including multiple reports by more than one coworker of her having slept on the job.

In May 2012, CNA Glenn Portman reported that plaintiff had been sleeping while on duty the previous night.  While the parties dispute whether plaintiff admitted to having "nodded off," it is undisputed that during The Terraces' subsequent investigation, a different CNA, Mercedita Todaro, confirmed that plaintiff often slept during her shift.  Plaintiff was suspended for three days and was advised that if she committed further infractions she could be subject to termination.

In August 2012, The Terraces received a complaint from CNA Maria Yen regarding plaintiff's conduct at work.  Yen informed management that plaintiff had been spending time on her cell phone while on duty and had failed to properly treat residents.  Plaintiff does not dispute this.  Moreover, Yen's

complaint followed a warning that plaintiff's employment could be terminated if she committed additional infractions.

Finally, in September 2012, plaintiff was again observed sleeping while on duty.

All of these instances of subpar work performance provide defendants with a legitimate, non-discriminatory reason for terminating plaintiff. Defendants have thus satisfied their burden at this stage of the analysis.

### c. Plaintiff Cannot Establish Pretext

Given defendants' legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to plaintiff to establish that defendants' proffered reason was pretext for unlawful discrimination. To demonstrate pretext, a plaintiff must establish "circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (internal quotation marks omitted).

Plaintiff produces little to support her claim of racial discrimination. Plaintiff alleges that a coworker informed her that defendants were looking to terminate her on account of her race. But plaintiff produces no evidence to back up this assertion. And while plaintiff may have felt insulted and demeaned when asked about her hair extensions in an interview with the

director of nursing, nothing in the record establishes that the interview was indicative of racial discrimination.

Further, plaintiff was not the only employee to be terminated for sleeping on the job: The Terraces also terminated an Asian male CNA for similar behavior.  Defs.' Rule 56.1 Statement ¶ 19.  Plaintiff's claim of discrimination is belied by such treatment of similarly situated employees who were not African-American.

In sum, plaintiff has not adduced sufficient evidence from which a reasonable factfinder could conclude that defendant's proffered reason for terminating plaintiff was a pretext to disguise a racially discriminatory motive. Defendants are entitled to summary judgment as to plaintiff's claims for employment discrimination.

## III.    Wrongful Discharge

Plaintiff's second claim is for common law wrongful discharge.  However, under New York law, "tort claims for wrongful discharge are unavailable to at–will employees."  *Mariani v. Consol. Edison Co. of N.Y.*, 982 F. Supp. 267, 275 (S.D.N.Y. 1997), *aff'd sub nom. Mariani v. Consol. Edison Co.*, 172 F.3d 38 (2d Cir. 1998) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 300–01 (1983)).  Here, plaintiff was an at-will employee.  Accordingly, defendants are entitled to summary judgment on plaintiff's claim for common law wrongful discharge.

## Conclusion

Defendants' motion for summary judgment is granted.  This resolves the motion numbered 19 on the docket.  The case is now closed.

SO ORDERED.

Dated:  New York, New York
       August 10, 2016

                               Thomas P. Griesa
                               United States District Judge

11